GREENFIELD COUNTRY ESTATES TENANTS ASSOCIATION, INC.
*vs.* MICHAEL A. DEEP, trustee,[1] & another.[2]

Franklin. January 9, 1996. - June 26, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, & O'CONNOR, JJ.

*Manufactured Housing Community. Mobile Home. Consumer Protection
Act,* Consumer, Landlord and tenant. *Constitutional Law,* Taking of
property. *Regulation. Statute,* Construction. *Real Property,* Specific per-
formance, Bona fide purchaser, Right of first refusal.

Discussion of the statutory scheme set forth in G. L. c. 140, §§ 32A-32R,
 intended to protect tenants of manufactured housing communities
 (formerly known as mobile home parks). [82-84]
General Laws c. 140, § 32R, as in effect in October, 1993, which requires
 an owner of a manufactured housing community who intends to sell the
 property on which the community is located to give notice to the ten-
 ants of the community and which further provides those tenants with a
 right of first refusal to purchase the property, does not amount to a
 regulatory "taking" burdening the free alienation of land, where the
 statute substantially advances a legitimate State interest, viz., to promote
 the continued existence of viable affordable housing for the tenants of
 such communities, and where the statute does not deprive the owner of
 economically viable use of such property. [85-87]
In an action brought under G. L. c. 93A, a Superior Court judge correctly
 in the exercise of his discretion entered an order for specific perfor-
 mance compelling transfer of a manufactured housing community to its
 tenants for the former owner's failure to comply with the notice provi-
 sions of G. L. c. 40, § 32R, with regard to the owner's sale of the prop-
 erty, which deprived the tenants of their statutory right of first refusal,
 and the availability of money damages did not preclude the award of eq-
 uitable relief. [87-90]

[1]Of the Greenfield Mobile Home Park Realty Trust. The defendants will
be collectively referred to as Deep. Another defendant, Elizabeth M. Ze-
winski (Zewinski), has an action for indemnification brought by Deep
pending against her. The amount of damages remains to be determined. See
note 16, *infra.* Although she has filed a brief as "intervenor appellee" with
this court, she is not a party to this appeal. Zewinski was the seller of the
locus of the mobile home community to Deep. In her brief, she argues that
the plaintiff in this appeal should prevail.

[2]Michael A. Deep, individually.

CIVIL ACTION commenced in the Superior Court Department on May 11, 1994.

The case was heard by *Francis X. Spina*, J., on a motion for partial summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*James R. Loughman* for Michael A. Deep.

*John J. Stobierski* for the plaintiff.

*Richard A. Freedman* for Elizabeth M. Zewinski.

*Scott Harshbarger*, Attorney General, & *Donna L. Palermino*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

LIACOS, C.J. This case presents us with two issues for resolution: (1) the constitutionality of G. L. c. 140, § 32R (1994 ed.), and (2) the propriety of an order of specific performance as a remedy for a violation of that statute. On June 12, 1995, a judge in the Superior Court granted a final partial summary judgment pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), to the plaintiff, Greenfield Country Estates Tenants Association, Inc. (association).[3] This judgment upheld the association's right of first refusal to purchase the property on which the mobile home community (manufactured housing community) is situated. The judge further granted the association an order of specific performance to compel transfer of the property. We conclude that the statute is constitutionally valid and that the judge properly awarded the remedy of specific performance for a violation of the statute. Accordingly, we affirm the grant of partial summary judgment.[4]

A familiarity with the statutes involved in this case is helpful to an understanding of the factual discussion. General Laws c. 140, §§ 32A-32R, establishes a statutory scheme intended to protect tenants of manufactured housing com-

---

[3]The original plaintiff in this action was an unincorporated association, the Greenfield Country Estates Tenants Association. On May 20, 1994, pursuant to Mass. R. Civ. P. 23.2, 365 Mass. 769 (1974), the complaint was amended to add certain of the association's members as plaintiffs and representative parties. The unincorporated association subsequently incorporated, and was substituted as the plaintiff on August 10, 1994.

[4]We acknowledge the assistance given us by the amicus brief filed by the Attorney General.

munities, formerly known as mobile home parks.[5] Both the Legislature and the courts of the Commonwealth have recognized that manufactured housing communities provide a viable, affordable housing option to many elderly persons and families of low and moderate income, who are often lacking in resources and deserving of legal protection. See *Commonwealth* v. *Gustafsson*, 370 Mass. 181, 190-191 (1976); *Commonwealth* v. *DeCotis*, 366 Mass. 234, 238 (1974). In recognition of the importance of protecting the rights of tenants in manufactured housing communities, § 32L was amended in 1986, St. 1986, c. 317, § 1, and § 32R was rewritten in 1993, St. 1993, c. 145, § 19.[6] As in effect at the time of the sale of the manufactured housing community involved here, the statute (G. L. c. 140, § 32R) required an owner of a manufactured housing community who intended to sell the property on which the community was located to give notice to the tenants of the community and to provide the tenants with information regarding a bona fide offer of purchase received from a third party.[7] That section further provided the tenants with a right of first refusal to purchase the prop-

---

[5]The language in §§ 32F-32R of the statute was amended in 1991. See St. 1991, c. 481, § 19.

[6]The amendment, effective August 13, 1993, eliminated a limitation on which tenants were entitled to receive notice of an intended sale. See note 5, *supra*. Prior to the amendment, a manufactured housing community owner was only obligated to provide tenants with information regarding a bona fide offer to purchase, and to offer a right of first refusal, upon receipt of a certified letter from an incorporated homeowners' association with articles of incorporation specifying the power to negotiate on behalf of the tenants. Zewinski stated that she was unaware of the August amendment until after she sold the property in December, 1993. The association was unincorporated in 1993.

[7]An owner of a manufactured housing community must notify each tenant by certified mail of the owner's intent to sell or lease the land on which the community is located. Such notice must occur within fourteen days after the owner makes public his or her intent to sell the manufactured housing community, and at least forty-five days before the sale or lease occurs. The notice must include notice of the tenants' rights under the statute, and certified copies are to be sent to the Attorney General, the Secretary of Communities and Development, and the local board of health. If more than fifty per cent of the tenants residing in the community, or a group or association representing such tenants, so request in writing, the owner must notify each resident of receipt of a bona fide offer to purchase the land that the owner intends to accept. The group then has the right to purchase the community on substantially similar terms and conditions as the third-party bona fide offeror, subject to certain requirements regarding the timely

erty. Section 32L (7) of the same statute provided that "[f]ailure to comply with the provisions of sections thirty-two A to thirty-two S, inclusive, shall constitute an unfair or deceptive practice under the provisions of paragraph (*a*) of section two of chapter ninety-three A. Enforcement of compliance and actions for damages shall be in accordance with the applicable provisions of section[s] four to ten, inclusive, of said chapter ninety-three A." G. L. c. 140, § 32L (7).

The Commonwealth's consumer protection statute, G. L. c. 93A (1994 ed.), regulates business practices for the purposes of providing proper disclosure of information to consumers and to encourage an equitable balance between consumers and businesses. See *York* v. *Sullivan*, 369 Mass. 157 (1975). Under the statute as originally enacted, only the Attorney General could bring actions on behalf of citizens to enforce the statute's mandate. See G. L. c. 93A, § 4. Section 9 was added in 1969 and sets out a private right of action by an individual or individuals not engaged in trade or business who has or have been injured by unfair or deceptive practices. Such a person may seek monetary damages, including double and treble damage awards for knowing and wilful statutory violations, and such equitable relief as the court deems necessary and proper.[8] G. L. c. 93A, § 9 (1).[9]

The material facts are not in dispute. On October 9, 1993, Zewinski and Deep entered into an agreement for the purchase and sale of a parcel of land in Greenfield known as Brownie's Mobile Home Park. Zewinski listed the property for sale in July, 1993. Neither Zewinski nor Deep gave notice of the sale to the tenants of the park until December, 1993, after completion of the transaction.[10] On learning of the sale, fifty-five of the sixty-six tenants sent a letter to Deep request-

securing of financing and ability to consummate the sale. G. L. c. 140, § 32R (1994 ed.).

[8]Plaintiffs in District Courts are entitled to monetary relief only; equitable relief is not available. Plaintiffs in District Courts are also precluded from bringing class action lawsuits. G. L. c. 93A, § 9 (3A), as amended by St. 1978, c. 478, § 46.

[9]General Laws c. 93A, § 9 (3), provides in part that equitable relief is available in addition to or in the absence of monetary relief: "In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper."

[10]Zewinski additionally failed to notify the Attorney General, the Secretary of Communities and Development, and the Greenfield board of health

ing information regarding the terms of the sale, pursuant to G. L. c. 140, § 32R (*c*), in order to tender Deep a purchase and sale agreement on substantially similar terms in an effort to exercise their statutory right of first refusal. The association further demanded that Deep sell the park to it. Deep contested the applicability of the statute and refused to provide the requested information. After additional unanswered correspondence, the association commenced this suit on May 11, 1994.[11] On March 8, 1995, a judge in the Superior Court granted the association's motion for partial summary judgment, which became final on June 12, 1995. He ordered that, once the association complied with the statutory prerequisites, it was entitled to purchase the property on substantially the same terms and conditions as contained in the purchase and sale agreement between Deep and Zewinski. He further declared that the association was entitled to receive notice of those terms and conditions. Deep did not comply with the order, and the association sought and received an order of specific performance. Deep appealed to the Appeals Court, and we granted the association's application for direct appellate review.

1. We first address Deep's contention that G. L. c. 140, § 32R, creates a facially unconstitutional regulatory taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.[12] Deep, as the title owner of the affected property, has standing to raise the

of the pending sale. Such notification is required by the statute. G. L. c. 140, § 32R (*a*). See note 7, *supra*. The notice to the tenants took the form of a letter from Zewinski and a letter from Deep. Neither letter informed the residents of their statutory rights, as the statute requires.

[11]The association's complaint alleged, in addition to the violation of c. 93A, fraudulent conveyance, conspiracy, unjust enrichment, and illegal contract. The association additionally sought a declaratory judgment and injunctive relief. Preliminary injunctions issued against Deep and Zewinski on June 16, 1994.

[12]Deep invites us to find that art. 10 of the Massachusetts Declaration of Rights, which states in part that "no *part* of the property of any individual can, with justice, be taken from him . . . [without] reasonable compensation therefor" (emphasis added), extends greater protection than that offered by the United States Constitution. He did not so argue before the trial judge and we confine our discussion here to Federal law. See *Lopes* v. *Peabody*, 417 Mass. 299, 300 n.2 (1994); *Steinbergh* v. *Cambridge*, 413 Mass. 736, 738 (1992), cert. denied, 508 U.S. 909 (1993).

constitutional question. See *Lopes* v. *Peabody*, 417 Mass. 299, 303 (1994). The statute is constitutionally sound.

Deep does not allege that the government has physically "taken" his land, see *Yee* v. *Escondido*, 503 U.S. 519, 527 (1992), but rather contends that § 32R burdens the free alienation of the land so as to create a regulatory taking. A regulation amounts to a "taking" if it fails substantially to advance a legitimate State interest or deprives a landowner of economically viable use of the land. *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825, 834 (1987), citing *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980). *Lopes* v. *Peabody*, *supra* at 304-305 & n.9.

We conclude that the statute substantially advances a legitimate State interest. Deep concedes that the government's interest, the preservation of available property to accommodate manufactured housing communities, is legitimate. He argues, however, that the right of first refusal in favor of tenants of manufactured housing communities does not substantially advance that interest. A description of the difficulty faced by the Commonwealth regarding the continued existence of viable, affordable housing for the elderly and persons of low and moderate income is found in St. 1986, c. 317, § 1, the emergency preamble to the statutory enactment of § 32L, and St. 1993, c. 145, § 19, an amendment to § 32R. The goal of the statute is to avoid discontinuances of manufactured housing communities and to ensure that tenants of such communities are not left at the peril of their landlords due to a practical inability to relocate a manufactured housing unit. "Unless mobile home owners receive further protection in relocating their homes upon mobile home park discontinuances than the law now affords, this increasing shortage of mobile home park sites and increasing cost of relocation will generate serious threats to the public health, safety, and general welfare of the citizens of the commonwealth, particularly the elderly and persons of low and moderate income." St. 1986, c. 317, § 1. The statute enables residents of manufactured housing communities to purchase the land on which their homes exist and thus avoid discontinuances of manufactured housing communities. This creates stability for those homeowners and promotes continued existence of affordable housing. It is difficult to imagine a more appropriate and close-fitting method to further the legitimate interest of the Commonwealth.

Even a regulation enacted pursuant to a State's legitimate exercise of its police power may constitute a taking if it deprives the owner of all economically viable use of the land. *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). The statutory right of first refusal minimally limits an owner's freedom to transfer property in that the owner must offer the property to the tenants on substantially the same terms and conditions as contained in a bona fide offer of purchase. The owner is not required to sell to the tenants on terms less favorable than he or she can receive from a third party. Further, the statute imposes no restriction on transfers of property by gift, devise, or operation of law. G. L. c. 140, § 32R (*d*). The statutory right of first refusal cannot be said materially to affect the marketability of the property so as to deprive it of economic value. We do not speculate as to the validity of Deep's unsubstantiated assertions that the restriction results in a diminution in property value or reduces the pool of prospective purchasers. We note only that mere conditioning the sale of the property to a right of first refusal does not amount to a taking. See *Andrus* v. *Allard*, 444 U.S. 51, 66 (1979). The owner may continue to approve tenants, to collect rents, to promulgate rules of the park with the approval of the Attorney General, and to make improvements to the land.[13] Section 32R does not deprive an owner of economically viable use of the property.

2. Deep next claims that specific performance was an improper remedy for Deep's violation of G. L. c. 140, § 32R. He states first that the judge erroneously believed he was required as a matter of law to award the remedy of specific performance. There is no evidence in the record that the judge felt constrained to award specific performance rather than monetary damages. Whether specific performance should be granted is within the sound discretion of the judge. *Raynor* v. *Russell*, 353 Mass. 366, 367 (1967). Indeed, the judge recognized that "[c.] 93A permits a wide array of relief, including specific performance." The judge was aware of and properly exercised his discretion.

Deep further asserts that awarding an equitable remedy

[13]Further, the statute cannot be said to affect investment-based expectations as it was in effect when Deep purchased the property. See *Steinbergh* v. *Cambridge*, 413 Mass. 736, 742-743 (1992); *Flynn* v. *Cambridge*, 383 Mass. 152, 160 (1981).

such as specific performance was inappropriate under G. L. c. 93A because an adequate remedy existed at law. It is the premise of his argument that G. L. c. 93A, which provides for monetary damages and such equitable relief as the judge deems appropriate in order to remedy an injury caused by unfair and deceptive acts, incorporates the common law preference for legal damages. It is true that the general common law rule was that equitable remedies are not available to one who can be fully and adequately compensated at law. The availability of money damages does not, however, bar a suit in equity for specific performance. This is particularly true where, as here, the interest is one in real property. See *Leardi* v. *Brown,* 394 Mass. 151, 159 (1985); *Olszewski* v. *Sardynski,* 316 Mass. 715, 717 (1944); *Noyes* v. *Bragg,* 220 Mass. 106, 109 (1915); 11 S. Williston, Contracts § 1418A (3d ed. 1968). It is well-settled law in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land. We need not decide today the precise outer limits of a judge's discretion to award equitable relief for violations of the consumer protection statute, as this award of specific performance was wholly consistent with both the common law and the mandates of c. 93A. There was no error.

We have stated that c. 93A "granted full authority to the courts to use their traditional equity power to fashion decrees to remedy the wrong complained of and to make the decree effective." *Commonwealth* v. *DeCotis,* 366 Mass. 234, 245 (1974), and cases cited. Section 9 (1) of G. L. c. 93A allows a consumer to bring an action for damages "and" such equitable relief as the court deems necessary and proper. General Laws c. 93A is a statute of broad impact that created new substantive and procedural rights previously not available at common law. See *Leardi* v. *Brown, supra* at 159; *Heller* v. *Silverbranch Constr. Corp.,* 376 Mass. 621, 626 (1978); *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 693 (1975). "[I]t was not designed to limit their pre-existing rights and remedies, or to create obstacles to their pursuit." *York* v. *Sullivan,* 369 Mass. 157, 164 (1975), citing *Commonwealth* v. *DeCotis, supra* at 244 n.8. Cf. *Calimlim* v. *Foreign Car, Inc.,* 392 Mass. 228, 236 (1984) (c. 93A recovery intended to supplant traditional remedies). Rather, the Legislature sought to ensure latitude in the manner, be it legal or equitable, in which the statute is

enforced to protect consumers. Further, tenants are among those intended to benefit from the statute. *Leardi* v. *Brown, supra.* It is a central theme of the statute that the Attorney General have the power to restrain and prevent unfair and deceptive acts, and not simply to redress wrongs already committed. To this end, the awarding of injunctive relief is a common and effective tool. So, too, is specific performance often an appropriate "remedy of enforcement" which furthers the preventive goal of the statute.

Specific performance is a proper remedy to enforce a valid option to purchase real property.[14] *Allen* v. *Rakes,* 359 Mass. 1, 6 (1971). *Raynor* v. *Russell, supra. Curley* v. *Mobil Oil Corp.,* 860 F.2d 1129, 1135 (1st Cir. 1988) (applying Massachusetts law). On notice of receipt of a bona fide offer from a third party, a right of first refusal ripens into an option to purchase according to its terms. *Roy* v. *George W. Greene, Inc.,* 404 Mass. 67, 70-71 (1989), *S.C.,* 408 Mass. 721 (1990). The right is not extinguished by sale to a third party with actual or constructive notice of the right. A holder is entitled to injunctive protection against sale to a bona fide purchaser, and may enforce the right in an action of specific performance against a third party who purchased with notice of the option. The third-party purchaser holds legal title, subject to the equitable obligation to convey the property to the holder of the right on receipt of payment of the required purchase price. That the transfer of the property is contingent on the payment of the purchase price adequately protects the interests of the third-party purchaser who takes with notice of the right. *Tucker* v. *Connors,* 342 Mass. 376, 382 (1961). *Parkhurst* v. *Maynard,* 285 Mass. 59, 62-63 (1933).

Deep purchased the property on which the manufactured housing community is located subject to the association's

---

[14]Deep contends that the "right of first refusal" referred to in G. L. c. 140 is part of a statute sui generis, and therefore that its meaning may differ from its common law meaning. The common meaning of a right of first refusal involving real estate is well established. There is no reason to impute to the phrase a new meaning in the context of this statutory scheme. Further, Deep suggests no other meaning. See *Sampson* v. *Treasurer & Receiver Gen.,* 282 Mass. 119, 122 (1933); 2A Singer, Sutherland Statutory Construction § 50.03, at 103 (5th ed. 1992) ("The interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter").

right of first refusal. Deep had at least constructive notice of the statute, and was thus not a bona fide purchaser.[15] The sale by Zewinski did not cut off the right of first refusal held by the association, which on learning of the transaction timely notified Zewinski and Deep of its intention to exercise its right. Deep, as holder of legal title subject to the equitable right of the association, became obligated to comply with the statutory requirement to disclose to the association the terms and conditions of the sale. On the association's tender of a purchase and sale agreement substantially in accord with the terms and conditions of the sale from Zewinski to Deep, Deep will become obligated to transfer the property to the association.

Finally, Deep contends the award of specific performance was improper because the judge failed to engage in an equitable balancing of interests. Specific performance is an equitable remedy, and thus is not appropriately granted in those special circumstances where it would impose an undue hardship on one party or allow the other to obtain an inequitable advantage. *Freedman* v. *Walsh*, 331 Mass. 401, 406 (1954). *Curley* v. *Mobil Oil Corp.; supra.* Cf. *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 208-209 (1993). Deep has shown no facts to support a finding that he will be unduly harmed by an award of specific performance. The association's payment of the purchase price of the property is a prerequisite to Deep's obligation to transfer the property, and adequately protects his interests.[16]

---

[15]Deep concedes he had constructive notice of the statutory obligation of a seller to notify tenants of an intent to sell property on which a manufactured housing community sits. He argues, however, that he was entitled to presume that Zewinski, as seller of the property, complied with the statutory obligation, and that he had no obligation to ensure Zewinski's compliance. Once it is established that Deep had constructive notice of a claim against the seller, he cannot protect himself by presuming the seller complied with her statutory obligation. Rather, he takes the property subject to those rights of which he has notice.

[16]Further, on September 8, 1995, a judge in the Superior Court granted Deep's motion for summary judgment as to his second amended cross claim against Zewinski. That order required Zewinski to indemnify Deep

The award of summary judgment in favor of the association is affirmed.

*So ordered.*

---

for any damages the association may recover against him and the reasonable and necessary expenses incurred by Deep in defending this suit.

Zewinski has filed an action for legal malpractice against the attorney representing her in this transaction for failing to advise her of the 1993 statutory amendment. It does not appear from the record that Deep has similarly filed such an action against his attorney.