DECISION
Before the Court is RLM Investment Group's (plaintiff) Request for Injunctive and Other Relief seeking to enjoin Alan M. Shine, Esquire, in his capacity as Receiver, pursuant to G.L. 1956 § 7-1.1-91, from conveying certain property to Hemlock Estates Tenants' Association. Jurisdiction is pursuant to G.L. 1956 § 8-2-13.
 FACTS AND TRAVEL
The Receiver, has, pursuant to court order, been managing a certain mobile home park, known as Hemlock Estates Mobile Home Park (hereinafter sometimes the "Facility"), situated in Glocester, Rhode Island. During July, 2000, the Receiver sought from and was granted permission by the Superior Court to market the mobile home park.
On or about October 4, 2000, plaintiff and the Receiver entered into a purchase and sale agreement with respect to the Facility. Upon receipt of the purchase and sale agreement and as therein provided, the Receiver notified the Hemlock Estates Tenants' Association (hereinafter "Tenants' Association") of the proposed sale in accordance with Rhode Island General Laws § 31-44-3.1, Sale of mobile home parks — Tenants association right of first refusal. Thereafter, on November 16, 2000, the Tenants' Association executed a purchase and sale agreement with the Receiver consistent with the terms set forth in the last mentioned statute.
The Tenants' Association has received an appropriate funding commitment needed by it to complete the purchase. Plaintiff commenced this action which, by agreement, has been consolidated with the Receivership action seeking injunctive and other relief to enjoin the Receiver from selling the Facility to the Tenants' Association and to compel the Receiver to sell the Facility to plaintiff.
The Department of Business Regulation (hereinafter "DBR") and Rhode Island Legal Services, Inc., on behalf of the Federation of Rhode Island Mobile Home Owners, were allowed to file amicus briefs. Resolution of the matter at bar requires this Court to interpret the meaning and intent of G.L. 1956 § 31-44-3.1.
 THE ARGUMENTS
The gravamen of the plaintiff's arguments is that G.L. 1956 §31-44-3.1 (2000 Reenactment) is clear and concise in providing that only a sale or lease which would result in a discontinuance of the use of the mobile home park as such triggers the right of first refusal by a home owners' association. The 2000 Reenactment reads in part:
 (a) If a mobile home park owner has been sent a registered or certified letter from an incorporated home owner household association indicating that the association's membership is at least fifty-one percent (51%) of the households in that park, and that the association has articles of incorporation specifying all rights and powers including the power to negotiate for, acquire, and operate the park on behalf of the member residents, then before a mobile home park may be sold or leased for any purpose that would result in a discontinuance, the owner shall notify the association by registered or certified mail, return receipt requested, of any bona fide offer that the owner intends to accept, to buy the park or to lease it for a use that would result in a discontinuance. (Emphasis added.)
The plaintiff argues that the language in the 2000 reenactment provides a home owners' association with the right of first refusal if, and only if, a purchaser or lessor intends to discontinue the use of an existing mobile home park as a mobile home park. Thus, this plaintiff contends, as it does not intend to discontinue the present use of the Facility, the right of first refusal does not apply according to G.L. 1956 §31-44-3.1 (2000 Reenactment).
The Tenants' Association counters that the interpretation suggested by the plaintiff would defeat the statutory purpose of G.L. 1956 §31-44-3.1, that purpose being it contends, to protect affordable and low income housing and to allow homeowners under this section to maintain their community. Allowing the plaintiff, as purchaser, to state only its current intent and avoid triggering the statute's right of first refusal provision would undoubtedly lead to the absurd result of a purchaser's claiming a lack of intent to discontinue the use as a mobile home park on the day 3 of closing and discontinuing the use the very next day; because of a legitimate change of intent or pursuant to a devious strategy to circumvent this provision. This could not have been the result intended by the Legislature.
The Tenants' Association further argues that the wording of the 2000 reenactment, upon which plaintiff relies, is the result of an error in revision and the correct wording can be found in the 1999 Pocket Part of G.L. 1956 § 31-44-3.1(a). The 1999 Pocket Part reads in part; "then before a mobile home park may be sold for any purpose and before it may be leased for any purpose that would result in a discontinuance, the owner shall notify the association. . . ." (Emphasis added). The Tenants' Association argues that the plaintiff relies on the 2000 reenactment, which contains a misprint that reads in part "then before a mobile home park may be sold or leased for any purpose that would result in a discontinuance, the owner shall notify the association. . . ." (Emphasis added.) Although the language of the 2000 reenactment may be clear as written, the Tenants' Association maintains it is, in fact, a misprint. According to the Tenants' Association, the pertinent language for this Court's consideration is that contained in the 1999 Pocket Part. The Tenants' Association contends that a reading of said language does not lead to an absurd, unreasonable result, such as a purchaser's changing of intent when the sale is final.
 STANDARD OF REVIEW
With respect to statutory interpretation, our Supreme Court has stated on several occasions that when determining questions of statutory construction, the court has an obligation to ascertain the Legislature's intent. Dart. Indus. Inc. v. Clark, 657 A.2d 1062 (R.I. 1995); State v. Benoit, 650 A.2d 1230, 1232 (R.I. 1994); State v. Kane, 625 A.2d 1361, 1363 (R.I. 1993). The Court has the responsibility of effectuating the Legislature's intent by examining the statute in its entirety and giving words their plain and ordinary meaning. Whitehouse v. Rumford Ins. Co., 659 A.2d 506 (R.I. 1995); In re Falstaff Brewing Corp., 637 A.2d 1047, 1049 (R.I. 1994). When a statute has a plain, clear, and unambiguous meaning, no interpretation is required. Whitehouse at 508; Krupa v. Murray, 557 A.2d 868, 869 (R.I. 1989). Moreover, the court will not ascribe to the legislature an intent that leads to an absurd or unreasonable result. Dart Indus. Inc. at 1064; State v. McDonald,602 A.2d 923, 926 (R.I. 1992).
 G.L. 1956 § 31-44-3.1(a)
This Court finds the statute to be clear and unambiguous in its language. The Legislature's intent is to protect mobile home owners from being displaced and forced to relocate to an already limited number of mobile home parks throughout the state. Allowing a mobile home owners' association a right of first refusal upon any sale and upon any lease that would result in a discontinuance would allow for the protection desired by the Legislature when enacting this statute. Any other result would defeat this purpose and lead to an absurd result. Through a "tenants' association," the Legislature clearly intended to afford mobile home owners the opportunity to purchase the mobile home park in the event of a sale and/or prevent the current owner from discontinuing the mobile home park through a lease for another purpose. This legislative intent is clear from the language used in G.L. 1956 § 31-44-3.1(a), which provides that "before a mobile home park may be sold for any purpose and before it may be leased for any purpose that would result in a discontinuance, the owner shall notify the association. . . ."
Such intent may also be construed from language used later in the statute. Section 31-44-3.2 (c) provides that "[t]he right of first refusal inures to a home owners' association for the time periods provided in this section, beginning on the date of notice to the home owners' association. The effective period of the right of first refusal applies separately for each substantially different bona fide offer to purchase the park or to lease it for any purpose that would result in a discontinuance. . . ." (Emphasis added.) Had the Legislature intended to limit the right of first refusal to only those situations that would result in a discontinuance, either by sale or lease, the language would have provided such by stating "to purchase or lease the park." The use of the word "park" and "it" provides a clear indication of the legislature's intent to keep separate the two alternatives. The wording is similar to section (a) of the statute and thus confirms the appropriate reading of the statute.
Moreover, other language of § 31-44-3.2 provides additional evidence of the Legislature's intent. The Legislature explicitly provided for one-year advance notice of the sale or lease to the residents in the mobile home parks and other benefits, such as relocation fees. The statute provides, in pertinent part, that "(a)(1) [i]f a mobile home park is to be sold or leased for any purpose which would result in a discontinuance of the mobile home park, the owner shall give notice of the sale or lease to each resident. Notice shall be given at least one year in advance of the sale or lease, and shall be by registered or certified mail, return receipt requested." If the Legislature intended that only sales that resulted in discontinuances would trigger the right of first refusal, this section would be superfluous. The fact that the section is separate and apart from G.L. 1956 § 31-44-3.1 is clear evidence that for a sale for any purpose, a right of first refusal applies according to G.L. 1956 § 31-44-3.1(a); and for any sale or lease that results in a discontinuance, the elements of G.L. 1956 §31-44-3.2 apply.
The additional protection afforded the mobile home owner against the mobile home park owner through G.L. 1956 § 31-44-3.2 is consistent with the legislative scheme as exhibited throughout Chapter 44. In examining G.L. 1956 § 31-44-1 et seq., the Mobile and Manufactured Home Act, it is clear that the Legislature intended to provide significant statutory protection to mobile home owners. Specifically, the Legislature provided that the DBR would have the power to interpret and implement the provisions of Chapter 44, G.L. 1956 § 31-44-1.4(1). Furthermore, the Legislature stated that the DBR would have general interpretation powers with respect to the rights and responsibilities of mobile and manufactured home park licensees and mobile home owners and residents. G.L. 1956 § 31-44-1.5(1). Additional protections in the Act are (i) § 31-44-3 (requirements for Rules and Regulations); (ii) § 31-44-4 (conditions for sale of mobile and manufactured homes); (iii) § 31-44-5 (reprisals); (iv) § 31-44-7 (terms regarding leasing homes) and (v) § 31-44-13 (the right to assemble and communicate).
The Tenants' Association further notes, and the plaintiff agrees, that the Rhode Island statute is patterned after Mass. Gen. Laws ch. 140, § 32R(b) (1993). In Greenfield Country Estates Tenants Association Inc. v. Deep, 666 N.E.2d 988, 990, 423 MA. 81 (1996), the Supreme Judicial Court of Massachusetts interpreted the statute as follows:
 ". . . the statute [sic] required an owner of a manufactured housing community who intended to sell the property on which the community was located to give notice to the tenants of the community and to provide the tenants with information regarding a bona fide offer of purchase received from a third party. That section further provided the tenants with a right of first refusal to purchase the property."
Upon review of all the sections of Chapter 44, the intent and general scheme by the Legislature are clear. The goal of the statute is the same as that of those in our neighboring states, "to avoid discontinuances of manufactured housing communities and to ensure that tenants of such communities are not left at the peril of their landlords due to a practical inability to relocate a manufactured housing unit." Id. at 992. "The statute enables residents of manufactured housing communities to purchase the land on which their homes exist and thus avoid discontinuances of manufactured housing communities. This creates stability for those homeowners and promotes continued existence of affordable housing." Id.
Accordingly, the Court construes G.L. 1956 § 31-44-3.1(a) to provide for a right of first refusal when any sale is forthcoming. The legislative intention to afford the mobile home owners' and a tenants' association the security and protection from upheaval, and possible relocation, in a time when such movement is difficult, if not impossible, due to limited resources and preclusive zoning enactments is clear. Without such protection mobile home owners and residents would be at the mercy of the purchaser. After review of the legislative history, this Court finds that this result is not that intended by the Legislature.
 THE ERROR IN REVISION
Section 31-44-1.4(1) clearly gives the DBR the power of interpretation and implementation of the provisions of Chapter 44, Mobile and Manufactured Homes, and the power to act for the promotion of a uniform policy relating to all phases of the mobile and manufacturing home business and use per section 31-44-1.4(2). Accordingly, this Court gives deference to the interpretation of § 31-44-3.1, regarding a tenant's right of first refusal, as set forth in the brief submitted by the DBR. See Whitehouse v. Davis, No. 2000-10-A, Slip Op. (June 5, 2001); Parkway Towers Associates v. Godfrey, 688 A.2d 1289 (R.I. 1997).
The DBR interprets the current edition of G.L. 1956 § 31-44-3.1 to be in the nature of a revisionist's misprint. "[T]he DBR has reviewed the legislative records, the affidavit of Cay Massouda, Director — Law Revision Office [sic], as well as the actual legislation in Rhode Island State Archives [sic], the DBR agrees that the actual legislation passed is reflected accurately in the 1999 Pocket Part of R.I. Gen. Laws §31-44-3.1(a) which states:
 "31-44-3.1 Sale of mobile home parks — Tenants association right of first refusal. — (a) In any instance in which a mobile home park owner has been sent a certified letter from an incorporated home owner households association indicating that such association has at least fifty-one percent (51%) of the home owner households residing within that park as members and has articles of incorporation . . ., then before a mobile home park may be sold for any purpose and before it may be leased for any purpose that would result in a discontinuance, the owner shall notify the association by certified mail return requested of bona fide offer that the owner intends to accept, to buy the park or to lease for a use that would result in a discontinuance. . . ." (Emphasis added.)
Moreover, our Supreme Court has held that
 "legislation promulgated during the reenactment process is passed only in the sense that legislative formalities are observed, this court has devised the rule that the meaning of a statute modified by a group such as the revision commission and subsequently reenacted is presumed to remain unchanged unless the specific proposed changes have been brought to the Legislature's attention. We have taken such an approach because a body such as a revision commission or a joint enterprise . . . has no authority to change the meaning of the law or to alter its substance in any regard and the revisionists are assumed to have worked within the limits of their authority. In re Richard P., 451 A.2d 274 (1982) (citing Briggs Drive, Inc. v. Moorehead, 103 R.I. 555, 563, 239 A.2d 186, 190 (1968))."
Due to the fact that a revision commission's error has no bearing on the meaning of a statute and G.L. 1956 §§ 31-44-1.4(1) and 31-44-1.4(2) make clear that the powers of interpretation and implementation of this chapter are held by the DBR, this Court recognizes that the language previous to and that of the 1999 Pocket Part to G.L. 1956 § 31-44-3.1(a) evidences the correct wording of the statute.
 CONCLUSION
For the above reasons, this Court finds that the language of G.L. 1956 § 31-44-3.1(a) provides for a right of first refusal to a home owners' association upon a "sale for any purpose." Accordingly, the plaintiffs' Motion for Preliminary Injunction and Attorney's Fees is denied.
The Receiver shall prepare and submit an appropriate Order for entry after notice.