WILSON COURTS TENANTS
ASSOCIATION, INC.,
Appellant,

v.

523–525 MELLON STREET,
LLC, Appellee.

No. 06–CV–259.

District of Columbia Court of Appeals.

Argued March 27, 2007.
Decided May 3, 2007.

Eric M. Rome, Washington, DC, for appellant.

Morton A. Faller, with whom Stephen A. Metz, Rockville, MD, was on the brief, for appellee.

Before RUIZ and REID, Associate Judges, and KERN, Senior Judge.

REID, Associate Judge:

Appellant, Wilson Courts Tenants Association, Inc. ("Wilson Courts"), filed a declaratory judgment action seeking to enforce its rights under Title IV of the Rental Housing and Sale Conversion Act of 1980, D.C.Code §§ 42–3404.02 *et seq.* (2001) ("the Act" or "TOPA"). Appellee, 523–525 Mellon Street, LLC ("Mellon"), moved for judgment on the pleadings on the ground that as a subsequent owner, it was not bound by Title IV. The trial court granted Mellon's motion and dismissed the complaint. We conclude that on this record Mellon was not entitled to judgment on the pleadings. Consequently, we vacate the judgment of the trial court and remand this case for further proceedings.

## FACTUAL SUMMARY

The record shows that on May 10, 2005, Wilson Courts filed a complaint for declaratory judgment and injunctive relief against Clinton Borland and Mellon. The complaint alleged, in part, that (1) Mr. Borland sold property located at the Mellon Street address to Mellon on June 21, 2004 (Paragraph 5); (2) the tenants were not informed about the sale until June 27, 2004 (Paragraph 6), and hence, they did "not receive their mandatory, statutory Notice of Opportunity to Purchase and Right of First Refusal" under Title IV of the Act (Paragraph 7); (3) "[t]he [t]enants ... obtained a copy of the Offer of Sale dated May 1, 2004, and a copy of a letter to the District of Columbia Department of Consumer and Regulatory Affairs ('DCRA'), citing the May 1, 2004 offer as evidence of statutory compliance, and requesting a letter from DCRA evidencing the same" (Paragraph 9); (4) "upon information and belief, DCRA relied on that letter and issued the requested letter of compliance" (Paragraph 10); (5) Mr. Borland and Mellon attempted "to cover up the violation and to harass and intimidate the [t]enants into forfeiting their rights with respect to the [p]roperty and or their tenancies" (Paragraph 11); and (6) "[Mr.] Borland submitted false information to DCRA and attempted, via information and intimidation to get individual tenants to sign documents falsely attesting to compliance, and upon information and belief, offering cash payments for false testimony" (Paragraph 12). Wilson Courts sought a declaration "that the defendants have failed to provide the [t]enants with their statutory Opportunity to Purchase and Right of First Refusal"; and they also demanded "specific performance" of their opportunity and right under TOPA.

In its July 5, 2005 answer to the complaint, which was not verified, Mellon asserted certain defenses, including a general statement that "[t]he complaint must fail under the law applicable to bona fide purchasers." Mellon also filed a cross-claim against Mr. Borland, declaring in part, that "Mellon LLC were without any notice prior to their purchase of any improprieties in affording the tenants at the subject property their Sale Rights" (Paragraph 4). As relief, Mellon requested damages against Mr. Borland if Wilson Courts prevailed. Later, on August 12, 2005, the trial court dismissed Wilson Courts' complaint against Mr. Borland because he had not been served.[1]

Mellon submitted a motion for judgment on September 16, 2005, pursuant to Super. Ct. Civ. R. 12(c) and Super. Ct. Civ. R. 41. In part, Mellon argued that "[t]he effect of

---

1. Wilson Courts had also been unsuccessful in serving Mr. Borland in an earlier case, filed in 2004, and it dismissed that complaint against all defendants (CA 04–9485).

the two dismissals [of the complaints against Mr. Borland,] ... exonerate Mr. Borland of the improper actions claimed against him, namely failure to give the residential tenants the opportunity to purchase the [p]roperty prior to sale to Mellon...." Hence, Mellon contended, "as the purchaser of the [p]roperty [it] has no liability." No affidavits or other documents were attached to the motion. Wilson Courts opposed the motion, in part, on the ground that both dismissals in effect were without prejudice, and thus, there was no adjudication on the merits. Moreover, Wilson Courts maintained that under TOPA, "Mellon is 'presumed to act with full knowledge of tenant rights and public policy ...,' [and] Mellon is, therefore, not a 'bona fide purchaser.'" Furthermore, Wilson Courts argued that because Mellon is the current owner of the property, Mr. Borland "could not give a notice to the tenants unless the sale [to Mellon] is first undone"; and since "Mellon essentially stands in [Mr.] Borland's shoes," the trial court could "direct Mellon to provide the [t]enants with ... the Right of First Refusal, and avoid the meaningless step of reconveying to [Mr.] Borland before giving notices."

The trial court issued an order granting Mellon's motion for judgment on December 22, 2005. In reaching its decision to grant Mellon's motion for judgment, the trial court declared:

> Under D.C.Code § [42–]3403.03, "[t]he owner shall provide each tenant and the Mayor a written copy of the offer of sale." Defendant Borland was the owner of the property prior to the sale, not Defendant Mellon.
>
> There is nothing in the statute that puts any obligation on the current owner. Therefore, taking all the facts even in a light most favorable to Plaintiff, Defendant Mellon could not have violat-

ed the statute as it was the subsequent owner and not the seller of the property.

Wilson Courts submitted a motion for reconsideration on December 28, 2005. It argued that Mellon's motion for judgment in "substance" constituted a motion to dismiss for failure to join an indispensable party under Super. Ct. Civ. R. 19, that the court effectively characterized Mr. Borland as an indispensable party, and consequently, dismissed the complaint against him. In light of one of our prior cases, Wilson Courts maintains that Mr. Borland "was merely a stakeholder, not indispensable"; rather, his presence might be "desirable." Hence, Wilson Courts maintains that "the proper remedy is not dismissal, but rather to require that [Mr.] Borland be joined and to afford the plaintiff an appropriate time to serve him and to consider all other options for proceeding in his absence if that fails." Mellon opposed Wilson Courts' motion for judgment on January 18, 2006, insisting mainly that (1) Wilson Courts "abandoned its claim against Mr. Borland"; (2) "Mellon has never owed a duty to plaintiff under [the Act]"; and (3) Wilson Courts also "abandoned its claim of liability for any wrongdoing." The trial court issued an order on January 30, 2006, denying the motion for reconsideration, without explanation. On March 8, 2006, Wilson Courts appealed the trial court's order granting Mellon's motion for judgment, as well as the court's order of March 15, 2006 denying the motion for reconsideration.

## ANALYSIS

Wilson Courts argues that the trial court "erred in determining that this action could not proceed in [Mr.] Borland's absence, and that Mellon's purchase did not violate [the Act]." Wilson Courts also claims that the trial court's "failure to consider the dictates of [Super. Ct. Civ. R.]

19 was an abuse of discretion, requiring reversal." Mellon contends that "[the Act's] plain language does not impose a duty upon the purchaser to comply with the Act's tenants notice provisions." In addition, Mellon takes issue with appellant's characterization of the motion for judgment as a dismissal for failure to join an indispensable party.

■■■ "Judgment on the pleadings may be granted only if, on the facts as so admitted, the moving party is clearly entitled to judgment." [2] *Bennings Assocs. v. Joseph M. Zamoiski Co.,* 379 A.2d 1171, 1173 (D.C.1977). "In considering such a motion the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* (citation omitted). "[A] motion for judgment on the pleadings should not be granted where there is a genuine issue of material fact." *Id.* (citing *Amberger & Wohlfarth, Inc. v. District of Columbia,* 300 A.2d 460 (D.C.1973)). "[O]ur review of the grant of judgment under Rule 12(c) is *de novo.*" *Id.*

Tenants have clear rights under the Act. D.C.Code § 42–3404.02(a) mandates in relevant part: "Before an owner of a housing accommodation may sell the accommodation, ... the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." *See Green v. Gibson,* 613 A.2d 361, 362 (D.C.1992). The owner is required to "provide each tenant and the Mayor a written copy of the offer of sale by first class mail and [must] post a copy of the offer of sale in a conspicuous place in common areas of the housing accommodation if it consists of more than 1 unit." D.C.Code § 42–3404.03. In addition

to the right to notice and opportunity to purchase, the Act commands that "a tenant or tenant organization shall also have the right of first refusal during the 15 days after the tenant or tenant organization has received from the owner a valid sales contract to purchase by a third party." D.C.Code § 42–3404.08. The Act's waiver provision is strict:

> An owner shall not request, and a tenant may not grant, a waiver of the right to receive an offer of sale under this subchapter. An owner shall not require waiver of any other right under this subchapter except in exchange for consideration which the tenant, in the tenant's sole discretion, finds acceptable.

D.C.Code § 42–3404.07. If there is an ambiguity in the Act, "[t]he purposes of [the Act] favor resolution of ambiguity by the hearing officer or a court toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under the law." D.C.Code § 42–3405.11. Furthermore, the rights of third party purchasers are subordinate to the rights of tenants under the Act. D.C.Code § 42–3404.04 provides, in part:

> The right of a third party to purchase an accommodation is conditional upon exercise of tenant rights under this subchapter.... Third party purchasers are presumed to act with full knowledge of tenant rights and public policy under this subchapter.

The Act authorizes legal and equitable actions to enforce the statute: "An aggrieved owner, tenant, or tenant organization may seek enforcement of any right or provision under this chapter through a civil action in law or equity...." D.C.Code § 42–3405.03.

---

**2.** Super. Ct. Civ. R. 12(c) provides in pertinent part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Furthermore, the legislative history of the Act emphasizes the rights of tenants for the purpose of avoiding displacement. As the Council report accompanying the Rental Housing and Sale bill stated:

> Title IV [Tenant Opportunity to Purchase] requires the owner with an intent to sell his accommodation to a third party, to first offer the accommodation to the tenant or tenants. This title continues the policy of the Council of preventing displacement by giving the tenants an opportunity to purchase their homes.

Council of the District of Columbia, Committee on Housing and Economic Development, Report on Bill 3–222, "Rental Housing Conversion and Sale Act of 1980," May 13, 1980 ("Council Report"), at 5. The section-by-section analysis of the bill explains that § 404 of the Act, D.C.Code § 42–3404.04 "declares the absolute priority of the tenants' rights pursuant to this title, and the conditional nature of the right of a third party to purchase the accommodation." Council Report, at 7. *See also 1618 Twenty–First Street Tenants' Ass'n v. The Phillips Collection,* 829 A.2d 201, 203–04 (D.C.2003) (noting that "[t]he Act was passed in response to the housing crisis in the District of Columbia, during which many residents were left with no home after their rental units were converted to condominiums," and recognizing "[t]he Council's desire to protect tenants' rights").

We now turn to the case before us. In accordance with D.C.Code § 42–3405.03, Wilson Courts, as an aggrieved tenant organization, brought an equitable action, in the form of a lawsuit seeking a declaratory judgment, to enforce its rights under the Act. In essence, the action is designed "to declare rights or other legal relations of the parties." RESTATEMENT OF THE LAW (SECOND), JUDGMENTS § 33 (1982). Specifically, Wilson Courts asked the trial court to declare its rights under the Act, and further, to determine "that the defendants have failed to provide the [t]enants with their statutory Opportunity to Purchase and Right of First Refusal." The trial court apparently concluded that the remaining defendant in the declaratory judgment action, Mellon, had no duty to provide the tenants an opportunity to purchase because it is a subsequent owner, and only Mr. Borland had the duty to safeguard the tenants' statutory rights. Therefore, the trial court dismissed Wilson Courts' complaint.

■ On this record we conclude that Mellon was not entitled to judgment on the pleadings for at least three reasons. First, the record is devoid of any document or affidavit attesting that Mellon is a *bona fide* purchaser without knowledge of the alleged failure on the part of Mr. Borland to provide the statutorily-required notice of his intent to sell and to give the tenants an opportunity to purchase the Mellon Street property. Hence, on the pleadings in this case, Mellon cannot be regarded as a *bona fide* purchaser. Second, the "facts" stated in Wilson Courts' complaint, which must be viewed in the light most favorable to it, *see Bennings Assocs., supra,* 379 A.2d at 1173, allege that the tenants did not receive the requisite notice of their opportunity to purchase the housing accommodation and their right of first refusal, and further describe both Mr. Borland and Mellon as engaged in an effort to "cover up the violation and to harass and intimidate the [t]enants into forfeiting their rights with respect to the [p]roperty and their tenancies." Given these factual allegations, and the lack of any affidavits or documents to demonstrate that there is no genuine issue of material fact concerning Mellon's involvement in the alleged efforts to circumvent

notice to the tenants and their opportunity to purchase the housing accommodation, Mellon was not entitled to judgment on the pleadings because there are genuine material facts which must be resolved in this case. *Id.*

Third, the plain language of the Act and the Act's legislative history leave no doubt that the rights of the tenants are paramount in relation to those of others, including subsequent owners. Indeed, D.C.Code § 42–3404.04 contains two pivotal policies: (1) a third party who wishes to purchase an accommodation only has a conditional right, a right conditioned on "the exercise of tenant rights" under the Act; and (2) the right of the third party to purchase is governed by the presumption that such purchaser "act[s] with full knowledge of tenant rights and public policy" under the Act. The Act embodies other significant policies, set forth in D.C.Code § 42–3404.07:(1) an owner is prohibited from requesting and "a tenant may not grant a waiver of the right to receive an offer of sale"; and (2) an owner is precluded from "requir[ing] waiver of any other right [under the Act] except in exchange for consideration which the tenant, in the tenant's sole discretion, finds acceptable." Even if the language of Title IV of the Act were considered ambiguous, the statute itself and the legislative history leave no doubt about the paramount position of the tenant. D.C.Code § 42–3405.11 specifies that hearing officers and courts are to resolve ambiguities in the Act in a manner that "stengthen[s] the legal rights of tenants or tenant organizations to the maximum extent permissible under the law." And, the legislative history reveals that D.C.Code § 42–3404.04 reflects "the absolute priority of the tenants' rights pursuant to [Title IV of the Act], and the conditional nature" of third party purchasers' rights. Consequently, based on the allegations of the complaint, Mellon was not

"clearly entitled to judgment" on the pleadings. *Bennings Assocs., supra,* 379 A.2d at 1173. By granting judgment on this record, the trial court gave priority to Mellon's rights, not to those of the tenants.

Our conclusion in this case is supported by a remarkably similar case decided by the Supreme Judicial Court of Massachusetts, *Greenfield Country Estates Tenants Ass'n v. Deep,* 423 Mass. 81, 666 N.E.2d 988 (1996). There, the owner of property and a third party purchaser contracted for the sale of land in a manufactured housing community. *Id.* at 994. A Massachusetts statute, which was enacted to protect the rights of tenants, "required an owner of a manufactured housing community who intended to sell the property on which the community was located to give notice to the tenants of the community and to provide the tenants with information regarding a *bona fide* offer of purchase received from a third party." *Id.* at 993 (footnote omitted). The statute also "provided the tenants with a right of first refusal to purchase the property." *Id.* And, the statute specified that injured parties could seek both legal and equitable relief. *Id.* at 994. When the owner of the property sold it to a third party without giving the tenants their statutory rights, the tenants' association brought a lawsuit demanding specific performance of their statutory rights; and the trial court "granted the [tenants'] association an order of specific enforcement to compel transfer of property." *Id.* at 992. The Supreme Judicial Court of Massachusetts affirmed the trial court's judgment, declaring that the "[trial court] properly awarded the remedy of specific performance for a violation of the statute." *Id.*

In its analysis, the Massachusetts court determined that "the right of first refusal ripens into an option to purchase" upon "notice of receipt of a *bona fide* offer from

a third party." *Id.* at 993 (citations omitted). Similarly, we have previously concluded that "[a] right of first refusal is a conditional option empowering its holder with a preferential right to purchase a property on the same terms offered by or to a *bona fide* purchaser," and further determined that both a statutory right of first refusal and a contractual right of first refusal "follow the same principles and are subject to the same analyses." *Wallasey Tenants Ass'n. v. Varner,* 892 A.2d 1135, 1141 (D.C.2006) (citation omitted). Hence when Wilson Courts finally received notice of Mr. Borland's sale of the Mellon Street property to Mellon, it held a conditional option to purchase the property.

The Massachusetts court declared that the tenants' option to purchase "is not extinguished by sale to a third party with actual or constructive notice of [the tenants] right." *Greenfield, supra,* 666 N.E.2d at 989. In addition, the court stated that the third party purchaser "had at least constructive notice of the statute, and was thus not a *bona fide* purchaser." *Id.* at 990. Here, as in *Greenfield,* the sale to Mellon did not extinguish the tenants' option to purchase since Mellon had at least constructive knowledge of the tenants' rights under TOPA. Thus, Wilson Courts, as holder of a conditional option to purchase, would be "entitled to ... enforce [its statutory rights] in an action for specific performance against [Mellon, the third party purchaser] who purchased with [constructive] notice of the [tenants'] option." *Greenfield, supra,* 666 N.E.2d at 989; *see also Abdallah v. Abdallah,* 359 F.2d 170, 174 (3d Cir.1966) ("the purchaser is bound to make inquiry as to all rights and interests, including option rights, of the person in possession of the property and, therefore, takes subject to those rights") (citations omitted); *Stone v. W.E. Aubuchon Co.,* 29 Mass.App.Ct. 523, 562 N.E.2d 852, 854 (1990) ("A completed sale to a third party does not extinguish the lessee's right of first refusal"); *Tucker v. Connors,* 342 Mass. 376, 173 N.E.2d 619, 623 (1961) (("holder of an enforceable option is entitled to injunctive protection against conveyance to a *bona fide* purchaser, which may render performance impossible") (citing Corbin, Contracts, §§ 43, 272, 418) (other citation omitted)).

Under these circumstances, we must remand this matter to the trial court with instructions to reinstate Wilson Courts' complaint and to fashion an equitable remedy which takes into consideration the tenants' statutory rights and Mellon's showing of a good faith purchase. *See Greenfield, supra,* 666 N.E.2d at 994. *See also Independence Mgmt. Co., Inc., v. Anderson & Summers,* 874 A.2d 862, 867–68 (D.C.2005) ("Specific performance is an extraordinary equitable remedy, and the determination whether or not to order specific performance is confided to the 'sound and informed discretion' of the trial court.") (citing *Drazin v. American Oil Co.,* 395 A.2d 32, 34 (D.C.1978)).

Accordingly, for the foregoing reasons, we vacate the judgment of the trial court and remand this case for further proceedings.[3]

*So ordered.*

---

3. On remand the trial court may determine whether it is necessary to address the Super. Ct. Civ. R. 19 issue raised by Wilson Courts, which we do not consider in this opinion, that is, whether Mr. Borland is an indispensable

or necessary party. *See Raskauskas v. Temple* *Realty Co.,* 589 A.2d 17 (D.C.1991).