MOORE, Judge.
P & N Kissimmee I, LLC, and Kent Lee Holloway appeal from a summary judgment entered by the Jefferson Circuit Court (“the trial court”) in favor of Regions Bank (“Regions”). We reverse the judgment and remand the cause.
Background[1]
P & N and Regions entered into a loan agreement (“the loan”), which was *49 amended on June 30, 2010, to provide P & N “a very limited right of first refusal” pursuant to which
“[i]f [Regions] obtains an offer to purchase the Loan on terms that it deems acceptable, [Regions] agrees to extend to a third party of [P & N’s] designation (the ‘Third Party Purchaser’), under conditions acceptable to [Regions] in its sole discretion, a very limited right of first refusal to purchase the Loan on the same terms.”[2]
“ ‘A “right of first refusal” is a conditional option empowering its holder with a preferential right to purchase a property on the same terms offered by or to a bona fide purchaser.’ ” Starr v. Wilson, 11 So.3d 846, 853 n. 2 (Ala.Civ.App.2008).
“A right of first refusal is not an option to purchase property at a certain price, but a limitation on the owner’s ability to dispose of property without first offering the property to the holder of the right at the third party’s offering price. 25 S. Williston, Contracts § 67:85 (4th ed.2002). The conditions of, and the duties imposed by, a right of first refusal are well established. Greenfield Country Estates Tenants Ass’n, Inc. v. Deep, 423 Mass. 81, 89, 666 N.E.2d 988 (1996). The owner’s obligation under a right of first refusal is to provide the holder of the right seasonable disclosure of the terms of any bona fide third-party offer. See Sudbury v. Scott, 439 Mass. 288, 297, 787 N.E.2d 536 (2003). It is the prerogative of the holder then to decide whether to purchase the property at that price. 25 S. Williston, Contracts, supra.”
Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 382-83, 805 N.E.2d 957, 962 (2004) (footnote omitted).
At some point before June 24, 2011, LSREF2 Baron, LLC (“Baron”), offered to purchase a pool of assets owned by Regions, including the loan. “A right of first refusal is triggered by a bona fide third-party offer to purchase the property burdened by the right.” Uno Restaurants, 441 Mass. at 383, 805 N.E.2d at 962 (recognizing enforceability of right of first refusal when burdened property is part of integrated transaction with sale of unburdened property). On June 24, 2011, Regions, pursuant to the right of first refusal, extended to Holloway, P & N’s designated third-party purchaser, an offer to sell the loan to him for $8,249,519.07. Holloway requested more information regarding the offer, but Regions rejected his request; Holloway subsequently declined to purchase the loan at that price.
On July 1, 2011, Regions entered into a “Sales and Assignment Agreement” (“the sales agreement”) with Baron, pursuant to which Baron purchased the .loan along with 255 other assets owned by Regions. Exhibit A-2 to that agreement allocated a *50 purchase price of $8,249,519.07 to the loan. On July 22, 2011, Regions and Baron executed an amended sales agreement. That same date, Regions assigned Baron the loan “[i]n exchange for the Purchase Price set forth in the [sales agreement].” The sales agreement, as amended, allocated a purchase price to the loan of $8,245,146.35.
On June 24, 2013, P & N and Holloway filed a complaint against Regions alleging that Regions had sold the loan to Baron “for substantially less than the price” extended to Holloway and that Regions had misrepresented or fraudulently suppressed the purchase price offered by Baron. P & N and Holloway eventually claimed that Baron had purchased the loan for between $5.7 million and $5.9 million.[3] P & N and Holloway sought damages and other relief for Regions’ alleged breach of contract, fraudulent misrepresentation, and suppression of a material fact.
On November 27, 2013, Regions filed a motion for a summary judgment on all claims. On December 19, 2013, the trial court entered a summary judgment in favor of Regions. In its judgment, the trial court determined that Regions had communicated the correct purchase price to Holloway, and, therefore, had not committed any misrepresentation as to that price, and that it had complied with the right of first refusal by giving Holloway an option to purchase the loan for $8,249,519.07. On January 24, 2014, P & N and Holloway filed their notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).

Issue

When a third party offers to purchase property burdened with a right of first refusal as part of a larger transaction involving other, unburdened property, the third party may allocate a bona fide price to the burdened property that establishes the amount that must be offered to the holder of the right of first refusal. Uno Restaurants, supra. The issue on appeal is whether Baron allocated a bona fide price of $8,249,519.07 for the loan.

Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders *51 Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Analysis

Exhibit A-2 to the sales agreement contains a column entitled “Purchase Price Allocation,” which designates $8,249,519.07 as the purchase price for the loan. Assuming, without deciding, that Exhibit A-2 represents the amount Baron allocated to the loan when formulating its purchase price, a question hardly free from doubt as the briefs of the parties attest, we conclude that a genuine issue of material fact exists as to whether Exhibit A-2 contains a bona fide price.
In opposition to the motion for a summary judgment filed by Regions, P & N and Holloway entered into the record an affidavit from Robert Loftin III, a certified public accountant. Loftin stated in his affidavit that he had analyzed “a series of spreadsheets that appear to constitute an underwriting model used by Hudson Ad-visors, LLC (‘Hudson Advisors’), which is the asset management company that performs due diligence for Lone Star Funds.” He attested that “Lone Star Funds is the sponsor for [Baron], which was organized to purchase a pool of distressed loans originated by Regions Bank, in this particular case, a certain pool of loans purchased on July 22, 2011.” According to Loftin, Baron’s diseounted-payoff offer (“DPO”) is “a common loan exit strategy currently being implemented by hedge funds that purchase distressed debt from banks.” Loftin stated that, based on his analysis of “the Hudson Advisors DPO model, it clearly appears that Lone Star offered and paid to Regions Bank approximately $[5,700,000] for the loan.”
Furthermore, P & N and Holloway introduced an internal document produced by Regions entitled “obligation-transaction history,” which indicates that Regions applied a principal payment of only $6,542,722.02 to the unpaid balance of the loan on July 22, 2011, while “writing off’ $2,939,483.81 as “principal adjust decrease.” That evidence, when viewed in a light most favorable to P & N and Holloway, supports an inference that Regions did not receive $8,249,519 from Baron but that it must have, in the terms of the right of first refusal, “deemed acceptable” an offer of some substantially lesser amount. When considered in conjunction with Lof-tin’s assessment of Baron’s valuation of the loan, we conclude that P & N and Holloway presented substantial evidence disputing the accuracy of the purchase-price allocation contained in Exhibit A-2 such that the amount Baron offered for the loan could not be decided as a matter of law.
In its summary-judgment order, the trial court determined that it was undisputed that Baron had offered and paid $8,249,519.07 for the loan, basing its determination entirely on the terms of the sales agreement, especially Exhibit A-2. However, P & N and Holloway presented substantial evidence outside the terms of the sales agreement and argued in their brief to the trial court, and also in their brief to this court, that, in fact, Baron did not offer or pay Regions the amount stipulated therein. We note that such evidence was not at issue in LSREF2 Barron, LLC v. Tauch (Civil Action No. 10-3388, March 12, 2013) (E.D.La.2013) (not reported in F.Supp.2d), a case in which a federal district court determined that Baron had paid the purchase-price allocation on a different loan than the one at issue here. Given that considerable difference, we decline to follow Tauch.

Conclusion

Based on the foregoing, we conclude that P & N and Holloway presented sub *52 stantial evidence of a genuine issue of material fact with regard to the true purchase price of the loan and, thus, whether Regions misrepresented or suppressed that price and breached the right-of-first-refusal provision. We therefore reverse the summary judgment entered by the trial court in favor of Regions, and we remand this cause for further proceedings consistent with this opinion.
All pending motions are denied.
REVERSED AND REMANDED.
. THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
DONALDSON, J., recuses himself.

. This court has considered only the evidence contained in the record on appeal and has not *49 considered any extraneous material appended to any brief or motion, which is outside the record.

. The provision goes on to state, in pertinent part, that the third-party purchaser must pay, in addition to the same price as the offeror, “any costs or fees [Regions] is forced to pay or refund to the Original Purchaser.” In its brief, Regions construes that clause for the first time as a separate ground to support the summary judgment. Although we may affirm a judgment on any valid legal ground, we may do so only if consistent with due process. Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). Because P & N and Holloway had no notice or opportunity to be heard below as to that alleged ground, it would be improper to affirm the judgment on that basis. More pointedly, we do not believe that the phrase "costs or fees” can be interpreted as Regions argues, so we conclude that Regions has not presented a valid alternative legal ground for affirmance.

. On appeal, P & N and Holloway stipulate that they are not basing any claim on the de minimis difference between the $8,249,519.07 purchase price offered to Holloway by Regions on June 24, 2011, and the $8,245,146.35 purchase-price allocation in the July 22, 2011, amended sales agreement.