*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CV-434

FOURTH GROWTH, LLC, APPELLANT,

v.

ANGELA WRIGHT, *et al.*, APPELLEES.

FILED 05/03/2018
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court of the
District of Columbia
(CAB-1463-15)

(Hon. John M. Campbell, Trial Judge)

(Argued March 29, 2018                                    Decided May 3, 2018)

*Ashley E. Wiggins*, with whom *Bruce M. James* was on the brief, for appellant.

*LaVonne Torrence Berner*, with whom *Andrew P. McGuire* was on the brief, for appellees. *Lydia A. Wade* entered appearance on behalf of appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN, *Associate Judge*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*:  Appellant, Fourth Growth, LLC, appeals a Superior

Court order dismissing with prejudice its complaint alleging that appellees, Angela

Wright and K2NC, LLC ("K2NC"), violated the District's Tenant Opportunity to

Purchase Act ("TOPA")[1] when Wright sold a single-family row house located at 2031 2nd Street, N.E. ("the property") to K2NC before giving the tenant, James Sadler, an opportunity to purchase the property. Upon learning of the sale, Sadler assigned his TOPA rights to Fourth Growth, which then notified Wright and K2NC of its intent to exercise its right of purchase. In a March 21, 2017, order, the trial court ruled that Fourth Growth's complaint failed to state a cause of action because Wright had "complied fully with TOPA," and in any event that Sadler's TOPA rights had expired before he purportedly assigned them to Fourth Growth. We affirm.

## I. Facts and Proceedings

Before December 2014, Wright owned the property, and Sadler was her tenant. On December 2, 2014, Wright entered into a contract to sell the property to K2NC for $300,000. A Tenant Addendum was attached to the contract disclosing that Sadler was still residing at the property, that there was "no lease," and that "buyer will evict tenant." Ten days later, on December 12, 2014, Wright conveyed title to K2NC via deed, which was recorded on December 19, 2014. That same

---

[1] D.C. Code § 42-3404.01 *et seq.* (2012 Repl.).

day, Wright signed a statutory "offer of sale" to Sadler, pursuant to TOPA § 42-3404.02 (a), which provides:

> Before the owner of a housing accommodation may sell the housing accommodation [to a third party] . . . , the owner shall give the tenant an opportunity to purchase the housing accommodation at a price and terms that represent a bona fide offer of sale.[2]

The offer of sale was hand-delivered to Sadler on December 20, along with a copy of Wright's contract of sale to K2NC, both of which, as required by TOPA,[3] were filed with Department of Housing and Community Development ("DHCD") on December 31, 2014.

---

[2] On "Form A," the "Offer of Sale & Tenant Opportunity to Purchase" presented to Sadler, Wright signed above the two lines designated for "Owner's Signature" and "Owner's Agent's Signature." Fourth Growth does not contend that Wright's signatures on both lines affected the validity of the offer.

[3] D.C. Code § 42-3404.09 (1) provides in relevant part:

> Upon receipt of a written offer of sale from the owner that includes a description of the tenant's rights and obligations under this section, or upon the Mayor's receipt of a copy of the written offer of sale, whichever is later, the tenant shall have 30 days to provide the owner and the Mayor, by hand or by sending by certified mail, with a written statement of interest.

As indicated on page 3A of "Form A," the "Offer of Sale & Tenant Opportunity to Purchase" signed by Wright and delivered to Sadler, DHCD is the Mayor's designee for receiving such notices.

In order to preserve his TOPA right to purchase the property, Sadler had "30 days," beginning after both he and DHCD had received the offer of sale, to provide "a written statement of interest" to both Wright and DHCD.[4] Upon doing so, Sadler would be entitled to a "reasonable period to negotiate a contract of sale"[5] with Wright (or her assignee)[6] — a period of not less than sixty days, "not including the 30 days" provided for expressing interest in the property.[7] Finally, "[i]n addition to any and all other rights specified," Sadler had a "right of first refusal during the 15 days after" receiving from the owner a copy of "a valid sales contract to purchase by a third party" — a period that would "begin to run at the end of the negotiation period[,]" if "the contract is received" during that period.[8]

Time passed without word from Sadler. On February 19, 2015, Sadler assigned his TOPA rights to appellant Fourth Growth. A day later, on February 20 — 51 days after Wright had filed the contract of sale with DHCD — Fourth

---

[4] D.C. Code § 42-3404.09 (1).

[5] D.C. Code § 42-3404.09 (2).

[6] D.C. Code § 42-3404.06.

[7] D.C. Code § 42-3404.09 (2).

[8] D.C. Code § 42-3404.08.

Growth notified Wright and K2NC that it intended to exercise its right of purchase.[9] The matter generated a dispute that would not settle.

On March 6, 2015, Fourth Growth filed a complaint against Wright and K2NC (amended on May 22, 2015) asking the Superior Court to: (1) enter a judgment nullifying the deed of the property to K2NC;[10] (2) rule that Wright had violated TOPA when she conveyed the property to K2NC without first providing Sadler with his opportunity to purchase under TOPA; and (3) order Wright to comply with the terms of TOPA before seeking to convey the property to K2NC. On June 2, 2015, Wright filed a motion for judgment on the pleadings, and on June 3, 2015, K2NC submitted a motion to dismiss. Thereafter, a long series of replies, responses, and submissions of supplemental memoranda ensued among the parties until November 19, 2015, when Fourth Growth filed a motion for partial summary judgment.

---

[9] Appellees note that Sadler sold his rights to Fourth Growth for only $100, implying that there was some kind of suspicious aspect to the sale. In its reply brief, Fourth Growth responds — outside the record — that the $100 was an "initial fee" that could "have potentially [grown] . . . in excess of $10,000" if Fourth Growth was "successful in purchasing the Second Street property and Mr. Sadler would have voluntarily surrendered his tenancy."

[10] The record does not show when Fourth Growth learned that Wright had deeded the property to K2NC before giving tenant Sadler the offer of sale.

On November 20, 2015, during a scheduling conference, the trial court said that it would grant the motion to dismiss and memorialize the decision in writing. For reasons unknown, the order was not entered until March 21, 2017. In its order, the trial court ruled that the complaint failed to state a cause of action because Wright had complied fully with TOPA, and it further ruled (without elaboration) that Sadler's "rights expired," meaning that Fourth Growth had "no rights at all" to justify a lawsuit. The trial court also observed that the Wright-K2NC contract had recognized and preserved Sadler's TOPA rights, and that "regardless of where title formally resided, Mr. Sadler was being offered the chance to buy the property before K2NC's ownership interest could be recognized." In discussing his ruling, the trial court noted:

> The plaintiff's argument rests entirely on a single word, ["before,"] not otherwise referred to, of a statute that sets out a comprehensive framework for protecting tenants' rights when the property they live in is up for sale. The sentence where it is found is the first sentence of the statute, discounting the short title. It is, in effect, a statement of general purpose that is then elaborated in thousands of words over TOPA's many substantive sections and subsections. It does not purport to establish an actual enforceable timeline – those are found in the later sections. *In its context, the phrase "before an owner . . . may sell" means the same as "no sale is final unless," or "any sale is contingent upon."* [Emphasis added]

On April 21, 2017, Fourth Growth timely filed this appeal.[11]

## II.  Issues

1.  When an owner contracts to sell residential rental property with notice of an existing lease, and then conveys the deed to the purchaser before offering the property for sale to the tenant as required by TOPA, may the owner cure that failure by giving the tenant an opportunity to purchase the property, subject only to a voidable deed, after the conveyance has been recorded?

2.  If so, did Fourth Growth, as the tenant Sadler's assignee, meet all statutory deadlines required to exercise its TOPA right to purchase?

3.  If Fourth Growth failed to meet the required statutory deadlines, is it nonetheless entitled to equitable relief — voidance of the deed coupled with the right to purchase the property — in light of Wright's conveying the property to a third-party purchaser, K2NC, before giving Sadler the required offer of sale?

---

[11]  Appellees filed a motion to dismiss this appeal on the ground that it was untimely, but a motions panel denied the motion on May 31, 2017.

## III. Standard of Review

We review *de novo* an order granting a Rule 12 (b)(6) motion to dismiss for failure to state a claim and a Rule 12 (c) motion for judgment on the pleadings.[12] To satisfy the Rule 8 (a) pleading requirement, we have relied on Supreme Court authority to say that the complaint must present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] More specifically, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] Facial plausibility, however, "do[es] not require heightened fact pleading of specifics,"[15] but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]

---

[12] *See District of Columbia v. Beretta*, *U.S.A.*, *Corp.*, 872 A.2d 633, 639 (D.C. 2005) (en banc) (reviewing application of Super. Ct. Civ. R. 12 (b)(6) and 12 (c)).

[13] *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (applying Super. Ct. Civ. R. 8 (a) after quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (construing Fed. Civ. R. 8 (a)).

[14] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[16] *Iqbal*, 556 U.S. at 678.

## IV. Analysis

### A. Was the Deed Void or Merely Voidable?

As noted above, D.C. Code § 42-3404.02 (a) provides:

> Before the owner of a housing accommodation may sell the housing accommodation [to a third party] . . . , the owner shall give the tenant an opportunity to purchase the housing accommodation at a price and terms that represent a bona fide offer of sale.

The parties agree — as both TOPA and our decisions reflect — that the words "*before* the owner . . . may *sell*" do not preclude an owner from executing a contract of sale with a third-party purchaser before the owner gives a bona fide offer of sale to the tenant.[17] As a matter of law, however, the contract is contingent

---

[17] D.C. Code § 42-3404.02 (a-2)(1)(B) makes clear that a bona fide offer of sale can mean either an offer premised on an existing contract, a hypothetical contract, or an appraisal. It provides:

> "Bona fide offer of sale" means an offer of sale for a housing accommodation . . . that is either:
>
> (i) For a price and other material terms that are at least as favorable as those accepted by a purchaser in an arms-length third-party contract; or
>
> (ii) In the absence of an arm length third-party contract, [(a)] an offer of a sale with a price and other material

(continued . . .)

upon the tenant's "right of first refusal" under TOPA to purchase the property;[18] the third-party contract cannot be finalized with delivery and recording of clear title until the tenant has had the statutory opportunity to purchase the "housing accommodation" where the tenant resides.[19]

Accordingly, the question becomes whether the legal situation has been changed by the additional fact that, contrary to the plain language of TOPA, the owner deeded its rental property to a third-party purchaser before the tenant received the required "offer of sale" granting him the opportunity to purchase the property. In its briefs, Fourth Growth argues that the premature conveyance of the property from Wright to K2NC nullified the sales contract and "void[ed] the

---

(. . . continued)

> terms comparable to that at which a willing seller and a willing buyer would sell and purchase the housing accommodation, or [(b)] the appraised value.

*See, e.g.*, *William J. Davis, Inc. v. Tuxedo LLC*, 124 A.3d 612, 618 (D.C. 2015) (landlord's offer of apartment building for sale to tenants' association at price and on terms as favorable as its offer to prospective third-party purchaser was prima facie evidence of landlord's intent to bargain in good faith); *1618 Twenty-First Street Tenants' Ass'n v. The Phillips Collection*, 829 A.2d 201, 204 (D.C. 2003) ("[W]hen there is a third-party contract, [TOPA] implicitly requires that the bona fide offer be roughly equal to the offer made to a third-party.").

[18] D.C. Code § 42-3404.08.

[19] D.C. Code § 42-3404.02 (a).

conveyance of the underlying deed"; there is a "default presumption," implicit in TOPA, that "any actual conveyance of the underlying real property has not occurred."

Furthermore, says Fourth Growth, there is no "safe harbor provision allowing a property owner to remedy a violation of D.C. Code § 42-3404.02 (a) by simply issuing a TOPA notice after the fact"; TOPA provides no "remedy whatsoever when it has been violated" short of a civil cause of action against the property owner and the third-party purchaser.[20] Essentially, therefore, as confirmed during oral argument, Fourth Growth is asserting that the deed conveyed to K2NC is void, not merely voidable, leaving Fourth Growth in a position to exercise the statutory right of first refusal and purchase the property forthwith upon reversal of the trial court's judgment.

We cannot agree. We conclude, to the contrary, that although the premature conveyance of the deed created a cloud on the title, the case law makes clear that

---

[20] *See* D.C. Code § 42-3405.03 (2012 Repl.) ("An aggrieved [ ] tenant . . . may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and, upon prevailing, may seek an award of costs and reasonable attorney fees.").

the deed was merely voidable.[21]  It follows that TOPA permits, indeed requires, a

bona fide offer of sale to the tenant despite a premature, and thus voidable, deed to

a third-party purchaser.[22]

## B.  Did the Tenant and the Assignee Satisfy TOPA Deadlines?

The question then becomes whether tenant Sadler or his assignee, Fourth

Growth, when claiming the right of first refusal to purchase the property, asserted

that right within the time frame required by TOPA.  We conclude that neither did

[21]  *See Wilson Courts*, *Tenants Ass'n v. 523-525 Mellon St., LLC*, 924 A.2d 289, 294 (D.C. 2007) (under TOPA, "the rights of the tenants are paramount in relation to those of others, including ——subsequent owners"); *id.* at 295 (quoting *Greenfield Country Estates Tenants Ass'n v. Deep*, 666 N.E.2d 988, 994-95 (Mass. 1996) ("[T]he tenants' option to purchase 'is not extinguished by sale to a third party with actual or constructive notice of [the tenants'] right.'"); *see also Tuxedo*, 124 A.3d at 618 ("Both the plain language and legislative history of TOPA leave no doubt that the rights of the tenants are paramount in relation to those of others, including subsequent owners.") (internal quotation marks omitted).

[22]  In an alternative approach, Fourth Growth casts its argument against a merely voidable deed in a more technical way.  It maintains that once Wright had conveyed the deed to K2NC, she altogether lacked authority to offer sale of the property to Sadler, absent reconveyance to Wright for that purpose.  As a result, the argument goes, Sadler has received no more than a "sham offer" of sale, not the bona fide offer required by TOPA, thereby nullifying the transaction with K2NC.  That analysis fails.  The defect was not in the offer to Sadler but in the conveyance to K2NC.  As a matter of law, Wright's conveyance to K2NC was contingent upon, and thus subordinate to, Sadler's right to exercise his TOPA rights, including timely acceptance of Wright's mandatory offer of sale to Sadler (or his assignee), followed by voidance of the deed to K2NC.

so. In reaching that result, it is useful to highlight again the three statutory phases anticipated for the typical TOPA transaction: (1) The rental property owner gives the tenant an offer of sale (with or without an attached third-party contract) granting the tenant a period of 30 days within which to provide the seller and DHCD with a "written statement of interest" in purchasing the property.[23] (2) If that written statement is timely provided, phase two is a "reasonable period" for the tenant or his/her assignee "to negotiate a contract of sale" with the owner a period of at least sixty days, "not including the 30 days" allowed for the expression of interest.[24] (3) Finally, "at the end" of the allowable "negotiation period," TOPA grants the tenant a "right of first refusal during the 15 days after the tenant" receives from the owner a "valid sales contract to purchase by a third party."[25] This 15-day period is granted "[i]n addition to any and all other rights specified" in TOPA.[26]

Thus, the question: in a case such as this without a phase one written statement of interest or a phase two negotiation period, is the tenant (or assignee)

---

[23] D.C. Code § 42-3404.09 (1).

[24] D.C. Code § 42-3404.09 (2).

[25] D.C. Code § 42-3404.08.

[26] *Id.*

entitled nonetheless to exercise a phase three statutory right of first refusal within 45 days from the date on which the tenant received a bona fide offer of sale? The parties appear to agree (or at least appellees do not dispute) that because the 15-day right of first refusal is available "[i]n addition to any and all other [TOPA] rights,"[27] this refusal right is tacked onto the initial 30 days allowed for submitting a written statement of interest, creating a 45-day window of opportunity. Assuming (without deciding) that the parties are correct, there is no dispute that Sadler and/or Fourth Growth (1) failed to provide a "written statement of interest" in purchasing the property within the statutory 30 days once DHCD received a copy of Wright's offer of sale,[28] and also (2) failed to exercise the statutory "right of first refusal" to do so during the 15 days thereafter.[29] These failures were fatal to Fourth Growth's claim.

As this court explained in *Tippet v. Daly*,[30] enforcement of "the thirty-day deadline by requiring that the statement of interest be made available to the owner

---

[27] *Id.*

[28] D.C. Code § 42-3404.09 (1).

[29] D.C. Code § 42-3404.08.

[30] 10 A.3d 1123 (D.C. 2010) (en banc).

within that time [ ] provide[s] certainty and predictability that benefit landlords and tenants alike."[31] Thus, "[h]aving considered the language of the statute, its structure, and its legislative history," we held that "that the tenant must provide the [owner] . . . with a statement of interest by ensuring that it is made available to him within thirty days."[32] It follows that, even if the *Tippet* analysis is extended to embrace an additional 15 days to allow Fourth Growth 45 days to assert its TOPA rights, Fourth Growth failed by taking 49 days to claim the right to purchase the property. The 49 days began with the offer of sale received by DHCD on December 31, 2014. The first 30 days ended on January 30, 2015, with the additional 15 days allowable for exercise of the refusal right ending on Monday, February 16, 2015 (reflecting two extra days allowed by the trial court "since the 15th day," a Saturday, "fell on a weekend").[33] The parties agree that Sadler did not assign his TOPA rights to Fourth Growth until February 19, 2015, followed by Fourth Growth's exercise of those rights by notifying Wright and K2NC on February 20, 2015 – 49 days after the offer of sale. In short, based on both parties'

---

[31] *Id.* at 1132.

[32] *Id.* at 1133 (quotation marks omitted).

[33] Without the weekend allowance, the time difference between the offer of sale and the purported exercise of first refusal was 51 days, as noted in part I. above. Neither party nor the trial court subtracted earlier weekends from the statutory time deadlines, nor does TOPA specify any weekend exception for the time deadlines.

and the trial court's time calculation, Fourth Growth asserted its TOPA rights four days late. Its TOPA claim accordingly fails unless Fourth Growth is entitled, as it contends, to equitable relief extending TOPA's deadlines.

### C. Is Fourth Growth Entitled to Equitable Relief?

Although Fourth Growth failed to meet the required statutory deadlines, is it nonetheless entitled to equitable relief? Citing standard equitable doctrine,[34] Fourth Growth asks for voidance of K2NC's deed, coupled with the right to purchase the property, despite late exercise of the right of first refusal, in light of Wright's erroneous conveyance to K2NC before giving Sadler the required offer of sale. We cannot agree.

Fourth Growth contends that, by forbidding K2NC to retain the property after Wright had prematurely conveyed the deed, the court would be granting "equitable relief" required by the facts. More specifically, it says, this court should grant such relief by "relax[ing] the applicability of TOPA's timelines and deadlines" that otherwise would penalize Fourth Growth for asserting its rights "a

---

[34] *Manning v. Potomac Elec. Power Co*., 187 A.2d 468, 472 (Md. 1963) ("[E]quity will not suffer a wrong to be without a remedy.").

few days late." Fourth Growth asks for equity especially because TOPA "is to be generously construed 'toward the end of strengthening the legal rights of tenants or tenant organization[s] to the maximum extent permitted under law.'"[35] This argument fails.

First, we have observed that TOPA is aimed not only at "'strengthening the bargaining position of tenants,'" but also doing so "'without unduly interfering with the rights of property owners to the due process of law.'"[36] But more to the point, we have already concluded above, contrary to Fourth Growth's premise, that premature conveyance of a deed pursuant to a contract with a third-party purchaser did not justify relief at law. Nor is relief called for in equity. While indeed irregular, the conveyance was not an irremediable violation of law; it was an easily voidable act.[37] And, of compelling significance, the parties do not dispute that Sadler and Fourth Growth had no fewer than 45 days from Wright's offer of sale to Sadler within which to exercise the tenant's (or his assignee's) right to purchase.

---

[35] *Richman Towers Tenants' Ass'n v. Richman Towers LLC*, 17 A.3d 590, 601 (D.C. 2011) (quoting D.C. Code § 42-3405.11).

[36] *Tuxedo*, 124 A.3d at 618 (quoting *Linen v. Lanford*, 945 A.2d 1173, 1177-78 (D.C. 2008) (quoting D.C. Code § 42-3401.02 (1) (2001)).

[37] See *supra* note 21 and accompanying text.

This right superseded K2NC's ownership of the deed,[38] and it is a right that Fourth Growth never says it lacked time to assert short of arriving on the scene too late to take advantage of Sadler's TOPA rights. We perceive no prejudice to Sadler or Fourth Growth, and thus, we allow no claim for equitable relief.[39]

## V. Conclusion

Appellee Wright conveyed to K2NC a voidable deed to her property before delivering a TOPA offer of sale to tenant Sadler on December 20, 2014. The

---

[38] The parties do not discuss whether a period of negotiation would be available to Fourth Growth if it had failed to deliver a written statement of interest within the first 30 days from the offer of sale, but had sought to exercise the right of first refusal during the last 15 days of the 45 allowed — an issue we do not address here.

[39] Fourth Growth also contends that Wright's "sham offer" of sale to Sadler (see *supra* note 22) entitled Fourth Growth, as Sadler's assignee, to equitable relief that would provide a fresh opportunity to purchase the property unburdened by statutory deadlines otherwise applicable. We cannot agree. As elaborated above, Wright's premature conveyance of the deed to K2NC did not prejudice either Sadler or Fourth Growth. That conveyance, easily undone, did not undermine the efficacy of Wright's offer of sale that clearly and comprehensively explained tenant Sadler's paramount TOPA rights preempting the conveyance to K2NC. *Cf. Rose v. Wells Fargo Bank, N.A.*, 73 A.3d 1047, 1051 (D.C. 2013) (statutory requirement that note holder's address must appear on notice of foreclosure was satisfied by address of note holder's agent, because that notice provided all information "needed to take steps to prevent the foreclosure or [to] contact the person handling the foreclosure on [the mortgagee's] behalf, while avoiding any misleading impression").

record confirms that Sadler received Wright's offer of sale; that DHCD received a written copy of the offer on December 31, 2014; and that neither Sadler nor his assignee, Fourth Growth, expressed interest in the tenant's right of first refusal to purchase the property until February 19, 2015 – 49 days after DHCD received its copy of the offer, which was too late under TOPA. Finally, for the reasons explained above, Fourth Growth is not entitled to equitable relief from the statutory deadlines it failed to meet, and Sadler's purported assignment of his TOPA rights to Fourth Growth was therefore an empty act. Accordingly, the judgment of the Superior Court dismissing the case for failure to state a claim is affirmed.

*So ordered.*