*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-635

FOSTER HOUSE TENANTS ASSOCIATION, APPELLANT,

V.

NEW BETHEL BAPTIST CHURCH HOUSING CORPORATION, INC., ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAR-5760-19)

(Hon. Jason Park, Trial Judge)

(Argued April 26, 2022                    Decided May 26, 2022)

*Eric J. Konopka*, with whom *Brent T. Murphy*, of the Bar of the State of Virginia, *pro hac vice*, by special leave of the court, and *Matthew J. Moore* and *Christopher J. Brown* were on the brief, for appellant.

*Gwynne L. Booth*, with whom *Richard W. Luchs* and *Vincent Mark J. Policy* were on the brief, for appellees.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*: Foster House Tenants Association appeals the Superior Court's grant of summary judgment for defendants New Bethel Baptist Church Housing Corporation, Inc. and Evergreen 801 RI Apartments LLC. Because

we conclude that ruling was legally and factually unsupported, we reverse and remand for the parties to proceed with discovery.

New Bethel and Evergreen entered into a 104-year ground lease for Square 0396N, Lot 0006, a plot of land on which the Foster House Apartments complex stands. The parties—whose relationship is opaque, *see infra*—agreed that Evergreen would pay both an upfront fee of $2,150,000, as well as gradually escalating rent beginning six years into the lease. In return, Evergreen would receive, first, a leasehold in the entire lot excluding Foster House[1], and second, a right to obtain a leasehold in that additional property for the remainder of the 104-year term, upon the occurrence of certain contingent conditions (the nature and probability of which are not clear, *see infra*).

The Tenants Association sued, alleging that the lease constituted a sale to a third party in violation of the District's Tenant Opportunity to Purchase Act (TOPA), D.C. Code § 42-3404.01 *et seq.* (2020 Repl. & 2021 Supp.). Several months later, New Bethel extended a TOPA offer of sale to the Tenants and filed a motion to

---

[1] It appears to us—as it did to the trial court—that this initial leasehold interest was to include the land underneath Foster House. New Bethel and Evergreen contend that the initial leasehold interest was to exclude the land underneath Foster House, but provide no support for this view other than some conclusory declarations.

dismiss or motion for summary judgment on the ground that the offer mooted the Tenants' claim.  As well as opposing the motion, the Tenants moved for summary judgment on the merits and requested rescission of the ground lease.  After providing notice to the parties, the trial court treated the defendants' subsequent opposition to the Tenants' motion as a cross-motion for summary judgment on the merits.  So construing, the court granted both of the defendants' motions for summary judgment, ruling that the lease did not constitute a sale under TOPA and that "the equities here [did] not favor rescission of the ground lease."[2]

Under TOPA as revised over the years, a "sale" of property is a term of art that extends beyond the immediate, absolute transfer of title.  The statute's definition of "the terms 'sell' or 'sale' include[s], but [is] not limited to, the execution of any agreement pursuant to which the owner of the housing accommodation agrees to some, but not all, of the following:"

> (1) Relinquish[ing] possession of the property;
>
> (2) Extend[ing] an option to purchase the property for a sum certain at the end of the assignment, lease, or encumbrance and provid[ing] that a portion of the

---

[2] Although the trial court's order contains a "mootness" heading indicating it was addressing New Bethel and Evergreen's claims that the Tenants' TOPA claim was moot by virtue of New Bethel's post-filing TOPA offer of sale, the court did not engage in any mootness analysis.

payments received pursuant to the agreement is to be applied to the purchase price;

(3) Assign[ing] all rights and interests in all contracts that relate to the property;

(4) Requir[ing] that the costs of all taxes and other government charges assessed and levied against the property during the term of the agreement are to be paid by the lessee either directly or through a surcharge paid to the owner;

(5) Extend[ing] an option to purchase an ownership interest in the property, which may be exercised at any time after execution of the agreement but shall be exercised before the expiration of the agreement; and

(6) Requir[ing] the assignee or lessee to maintain personal injury and property damage liability insurance on the property that names the owner as the additional insured.

D.C. Code § 42-3404.02(b). Further underscoring that function, not form, is paramount, § 42-3405.03b(b) states that the rights created under TOPA "shall be determined by examining the substance of the transaction or series of transactions" that is alleged to constitute a sale.

Insofar as the trial court ruled that something less than an absolute transfer of title is not a "sale" under § 42-3404.02(a), it was incorrect. As discussed above, "sell" and "sale" are defined in § 42-3404.02(b) and those definitions apply broadly

to all of "subchapters IV and V of this [C]hapter"[3]—in other words, the entirety of TOPA, codified as §§ 42-3404.01 to .14, and more. Any prior treatment of § 42-3404.02(b) as providing a secondary definition of "sale"[4] predates and cannot survive the 2005 amendments to TOPA.

But the court's ruling terminating this case not only evinced a misunderstanding of the law: it was also premised on an incomplete set of facts that did not permit a thorough analysis of the substance of the transaction at issue. Under the ground lease, "[i]f, at any time during the Term, [Foster House] become[s] vacant and unoccupied by tenants then, upon written notice from [Evergreen] to [New Bethel], [Foster House] shall thereafter become part of the Premises and shall thereafter be subject to all of the terms and conditions of this Lease . . . ." That the ground lease transfers only a leasehold interest rather than absolute title does not prevent it from constituting a sale under TOPA, *see* § 42-3404.02(c) (including master leases within the definition of a sale), nor does the fact that Evergreen's interest in Foster House is contingent upon a future event. *See* § 42-3404.02(b)(2),

---

[3] Referring to Chapter 34, "Rental Housing, Conversion, and Sale."

[4] *See, e.g.*, *Gomez v. Indep. Mgmt. of Del. Inc.*, 967 A.2d 1276, 1282 (D.C. 2009) (drawing on the definition of "sale" in *W. End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718 (D.C. 1994), to analyze the 2001 version of TOPA).

(b)(5). But the likelihood of that future event and the power the parties have to bring about its occurrence are surely germane to an analysis of the "substance of the transaction"—and the record is bereft of information about either one. *See* § 42-3405.03b(b).

Relatedly, the record in its current form raises a number of questions about the "Landlord Building Management Period," defined in the ground lease as "the period from the Effective Date and until the earlier of when (a) [Foster House] becomes vacant and unoccupied and (b) [Evergreen] provides notice to [New Bethel] of its intent to relocate existing tenants within [Foster House]." Given that Evergreen has no known relationship with the tenants of Foster House, it is unclear how or under what circumstances it would provide notice to New Bethel to relocate the latter entity's tenants. Additionally, is not apparent what clause (b) means: e.g., whether Evergreen must intend to relocate tenants to different units inside Foster House, or whether relocation outside the building (which might trigger inclusion of Foster House in the leased premises) is contemplated; and whether bare intent is enough, or whether ability or authority (from what source is unclear) to relocate tenants is required. And it is not apparent why Evergreen would want to trigger the end of the Landlord Building Management Period and incur the responsibilities of

paying insurance and taxes for Foster House[5] without realizing any apparent benefit, suggesting that the lease does not tell the whole story of the parties' agreement.

Finally, it is currently unclear who the parties to the ground lease actually are, and what their relationships are to one another. Appellees state in their brief to this court that the ground lease is between entities New Bethel and "Evergreen 801," which appellees describe as comprised of "members" New Bethel and Evergreen 801 RI Partnership LLC, thus putting New Bethel on both sides of the lease, though appellees provide no information about Evergreen 801's ownership structure. But in seeming contradiction, the ground lease states that the contracting parties are New Bethel and Evergreen 801 RI Partnership LLC. At any rate, no matter which Evergreen entity is party to the lease, Evergreen's legal relationships to New Bethel and to Foster House remain a mystery; at the hearing, defense lawyers variously described Evergreen as the Foster House building "manager" and as a "consultant" to manage New Bethel. The record also contains letters to the tenants from a "Foster House Tenant Engagement Coordinator," purporting to offer various redevelopment plans, but with no indication of for whom the coordinator works.

---

[5] At oral argument, counsel for appellees stated that the end of the period also transfers management control of Foster House from New Bethel to Evergreen. Nothing in the record substantiates that assertion, but if it is the case, it compounds the questions raised above.

Without knowing any of these details, it is impossible to ascertain what the ground lease actually purports to transfer, and to whom.

We thus conclude that the trial court's summary judgment ruling was premature and that more factual development is required.[6] In particular, in order to assess whether the transaction between New Bethel and Evergreen was a sale as contemplated by TOPA, it will be important to have a record that elucidates:

- The nature of the legal and business relationships between

    o the various Evergreen entities;

    o the Evergreen entities and New Bethel, including but not limited to an explanation of any jointly owned entities, production of any other legal or business agreements between the parties (e.g. consultancy agreements) and an explanation of which entities are party to the ground lease;

    o the Evergreen entities and Foster House, including but not limited to Evergreen's management responsibilities *vis a vis* Foster House;

---

[6] The trial court's determination that rescission is an inappropriate remedy was similarly premature. "[A] tenant may seek to enforce her TOPA rights by an action 'in law or equity,'" *Zanders v. Reid*, 980 A.2d 1096, 1103 (D.C. 2009), and whether the equitable remedy of rescission is appropriate depends upon the facts.

- o New Bethel and Foster House;

- The role, authority, and employer of the Foster House Tenant Engagement Coordinator;

- Any facts which influence the likelihood that a leasehold in Foster House will transfer to Evergreen, and within what time frame, including the respective powers of the Evergreen entities and New Bethel to relocate the Foster House tenants; the significance of the Landlord Building Management Period; and the respective powers of the Evergreen entities and New Bethel to effectuate the end of the Landlord Building Management Period.

Accordingly, we reverse the trial court's summary judgment ruling and remand for the parties to proceed with discovery and for further litigation of this case consistent with this opinion.[7]

---

[7] To the extent that the court determined that the Tenants' TOPA claim is moot, *but see* note 2, we disagree. If execution of the ground lease violated TOPA, the Tenants are entitled at least to a declaratory judgment. Our decision in *Fourth Growth, LLC v. Wright,* 183 A.3d 1284 (D.C. 2018), that a conveyance of property to a third party made on the same day a TOPA offer of sale was extended was voidable, not void, *id.* at 1289–90, does not foreclose relief in this case, where the belated TOPA offer of sale came 16 months after execution of the lease and six months after the Tenants filed suit.

*So ordered.*